In this case, I think the main issue is a definition of what was the properly calculated guideline range. I argued in the brief that under Booker, they talked about a defined range, and that defined range is the guideline range that is found by the apprentice standards, which is a statutory maximum that a judge may sentence based solely on the facts either In Booker, it states that even though the guidelines are advisory, they still must consult the guidelines to reach that guideline range. Then if they want to add enhancements, or if they want to depart downward and they must look at also the section 3553 issues, then that's where the guidelines are advisory now. But this defined range or guideline range is set by whatever a jury found, or in this case, whatever facts that the defendant admitted on the record. And that's the basis of this appeal, is that when he pled guilty without a plea agreement, he pled guilty to the indictment, which was for 50 grams. It was also a conspiracy and there was also a money laundering charge. And he pled guilty to those particular facts. The judge asked him, what did you do? And he said, I, you know, I had 50 grams of methamphetamine and I gave it to somebody else who gave it to somebody else. He also admitted to the money laundering. Those facts then set this defined range or guideline range. The first presentence report was correct and it said that for the amount of drugs that he admitted to and the money laundering, that he would have a level 26 plus 2 for money laundering. But then the presentence report also gave him a minus 2 for acceptance of responsibility because he did plead guilty. And they also gave him another minus 1 because the government said that they had the intent to bring a motion for his exceptional help with the case. Okay, so based on that, the defined range for sentencing that would be the boundaries for the court would be 57 to 71 months. During sentencing, however, well, after the presentence report came out, then the government objected and then the presentence report was revised and during sentencing, the government brought in other defendants in this case to testify on the drug amounts, et cetera, and it was raised. The problem is with this case is that is not what the defendant admitted to. And there were no drugs that were ever recovered. So how do you know for sure the exact amounts? You're just going on what someone else is saying because they're doing it pursuant to their pleas. Was this argument foreclosed by Amaline? I don't think so, Your Honor, because even Amaline stated that there's no Sixth Amendment violation as long as the sentence is within the defined range. And that's what my argument is, is what is this defined range? And I'm saying the defined range is what is explained in Booker is the parameters set by either what a jury finds or what is admitted by the defendant. That's the maximum. Now, if they wanted to find, like, leadership and obstruction of justice, any other enhancements during sentencing, that's okay. However, they can't go above that maximum mark. And that's what this court did. Now, if you take away that one level for because the government did not bring the motion, we still have a sentencing level of a max of 78 months. He was sentenced to 200 months. That's way over the boundaries that are permitted under Booker, which reemphasizes the holding in Apprendi, which states what this maximum can be. Counsel, did the judge decide this on a preponderance of the evidence? Correct, Your Honor. There's a brand new case, which I'm not sure that counsel is aware of, which is United States, which was decided on the 7th of June. And that case says that if there is a very substantial deviation from what would be the normal sentence of all these enhancements, that it must be on a clear and convincing standard. I believe I remember reading that case, Your Honor. And that's similar to what it was before, that if there's a great disparity between what the guideline sentence would be under admitted facts versus what was found, that it would have to be on the clear and convincing. But I'm arguing that... You're not relying on that. I'm not relying on that. And they didn't do it by clear and convincing evidence either in this case. They didn't. They did it by a preponderance. Correct. So you don't think that's some basis for your argument? That it should have been clear and convincing? If that's... And I believe that probably is the way the Ninth Circuit is looking at the sentencing, that if there is this disparity, it should be on clear and convincing. But my argument still stands that that would be an alternative argument, but that it should be based on what Booker is saying, that you still have to find, beyond reasonable doubt, for both the Sixth Amendment and the Fifth Amendment, if it goes outside the statutory maximum based on what the defendant admitted. I agree if it goes outside the statutory maximum. Correct. And the statutory maximum was defined by Apprendi as what is either found by a jury or admitted by the defendant. That was clarified in Booker. Well, Apprendi is really what led into Booker. And it seems to me you're kind of taking the first half of Booker and not the second half. Once the guidelines become advisory, it's no longer a violation of the Sixth Amendment for the judge to find things that affect the whole guideline range. But I believe Booker states that as long as they're still in this defined range, and even Justice Stevens states in Booker, he gives an example, that you still have to find that guideline range. Part 1 of Booker still stands, just because there's Part 2 that makes it advisory doesn't take Part 1 away. And so you still have to find this range, this guideline range is set by either the jury or the defendant. Then the court has the prerogative to find these other basises to enhance, but they still can't go over that. It may raise this lower end a little bit, but they still cannot go over it. Booker states that in there, that you cannot go over that maximum that is set by the Apprendi rule, really. And that's what the argument is here. Are you saying that after the pre-sentence report was amended and they brought all this other stuff in, which was used to raise the subject under the guidelines, that that difference there should have been determined by the judge beyond a reasonable doubt? I don't think the judge, if you're going to use anything, it would have to be beyond reasonable doubt, but I think that it's either a jury question or something that the judge should have asked the defendant about. I mean, if you look at the plea colloquy, the judge goes through and asks, and then the judge asks the U.S. government counsel, U.S. attorney, do you have anything else that you want me to ask? And he says no. Well, it seems to me at that point, if there were these other issues, like... In other words, basically, the guy pled guilty to 50 grams. Correct. And then that's the way the first probation and sentencing report came in. And then they come in and bring all this other information in. And he didn't plead guilty to that at all. Correct. And so... So what I'm saying is... You're saying that the sentencing ought to be limited to what he pled guilty to. Correct, Your Honor. Okay. And I think I'm not... He didn't plead guilty to that additional amount. Correct. And he was never asked. If the government had that information, which they should have had it, it was up to them, then he could have been questioned. Did you do this? How many times did you deliver drugs? How many times? He was never asked that. He was not charged either. Correct. But they bring in other witnesses who testified. During sentencing. Yes. Correct. However, that was... But the defendant did not admit to any of those facts. And that's where I'm saying that that's wrong. It's against the Sixth and Fifth Amendment to sentence based on facts not admitted by him. He did not admit that. Well, if the defendant pleads guilty and the district court calculates the guideline range, as you say, and then says, but the guideline range is advisory, and I've got reasons for going above the guideline range, so I'm going to sentence... I'm going to look at the 3553 factors and sentence above the guideline range. That can't be done under your... I don't believe so, Your Honor. Not the way I am looking at Booker, that the maximum guideline range is still set, but the judge has the advisory part says they do not have to apply these enhancements. Those were taken away. They can, but they still can't go over that maximum guideline range that's determined by those standards set. So you want to put a strict limit on the judge's discretion. That's what you're saying here. I think that's only... on just exactly what the defendant pled guilty to, but you see now we're moving back to the old system where when a judge imposed a sentence, the judge could consider all sorts of information that was in the probation report and base a ruling on that just so that the sentence was within the statutory limit, maximum. Okay, but I think we were talking about different statutory limits before Booker came out, and then Booker says, this is what we really meant in Apprendi about statutory maximums. So there's been this confusion, but I'm going by what Booker states, and the guidelines are still advisory. They still can do what they want within this. They can go down now without downward departure motions. But I think it's... Then they can go up too. I disagree that they can go above that maximum that was either found by a jury or admitted that. I think that it's upon them to ask those questions, to get that information out and find out what is the real story, just like you do in a trial. Thank you, Your Honor. I'm well over time. Well, you're thinking. Thank you. Give you an A on the examination. Good morning. Chris Thomas, Assistant U.S. Attorney for the United States. Essentially, the government disagrees with the argument, obviously. Let me ask you, when they're preparing the probation report, when the probation department is preparing, they work very closely with your office. Yes. They're no longer social workers. They're really an arm of the U.S. Attorney's Office. Even though they work for the court, they've forgotten about that a long time ago. So somebody falls asleep in your office and didn't say, hey, well, the guy pled guilty to 50, but he's really a bad guy and we've got a lot more stuff out there and we want to throw it in there. That didn't happen. It was later on that somebody woke up. Well, Your Honor, what happens, the process is that we submit all of our reports to the probation office. They read it. They read the transcript of the guilty plea verdict and then they come out with their draft pre-sentence investigation report. Now, when I saw that draft, I did not agree with it. I submitted my objection. And that's why it was changed later, because the – Well, why did they change it before they submitted the final report? Well, Your Honor, at that point – I mean, they were on vacation or out to lunch? No, Your Honor. They didn't want to be bothered or what? No, Your Honor. In this case, Mr. Posadon was one of 13 defendants that were indicted in this case. Now, in terms of that particular indictment, there were seven related indictments involving over 70 defendants in this case. Now, Mr. Posadon, at the time that he pled guilty, he actually pled guilty on a day that was set for three substantive motion hearings. So you can see by that process that he pled guilty very early on in this case. And now what's happening is all the other defendants are going to trial. So Mr. Posadon pled guilty early, and when the probation office was considering that pre-sentence investigation report, there were very many other defendants who were involved not only in the indictment with Mr. Posadon but in related indictments, who had evidence relating to the amount of drugs that Mr. Posadon actually was responsible for. Well, did these other people plead guilty? Eventually, yes, Your Honor. Eventually. So, you know, they were looking out for their own skin. They probably figured that this Posadon guy, you know, he was going to give the government a lot of information. It was going to work to their detriment. And so they figured, well, now's the time to plead guilty. And they did. But then they wanted to get back at him, and they said, well, wait a minute. You know, we got all this other stuff we can give you, and now you can up it up to whatever it was, way over 200, you know. Well, Your Honor. I mean, don't you, you know, the guy really helped you out, didn't he? Well, there were three. There were three witnesses. But essentially, the fallacy of defendant's argument is the characterization of the 50 grams. What Mr. Posadon was indicted for, the charges, was the first count was a conspiracy. The second count was a substantive distribution count. And the third count was a conspiracy for money laundering. Now, within the conspiracy, set out within the conspiracy, was the citation to the statute to which he pled guilty, 21 U.S.C. 841, 50 grams of methamphetamine. He was the first one to plead guilty, wasn't he? That's correct, Your Honor, within the indictment. So he broke the log jam for you. Well, he pled guilty first. But he was disputing the amount of drugs that he was responsible for. And that's why during the guilty plea, based on the case law that was occurring at that time, I reserved the right for a jury trial to determine the amount that he was going to be held responsible for. But the point I'm trying to make is. He did that at the guilty plea. I'm sorry, Your Honor. He did that at the guilty plea. Yes, Your Honor. Now, also, Your Honor, he pled guilty to column two, which is a substantive column, which is 50 grams of methamphetamine, which, again, cites to the statute of 21 U.S.C. 841, B1A. Now, under that statute, yes, it's 50 grams, but it's 50 grams of actual methamphetamine, which means that it sets the statutory mandatory minimum at 10 years and the statutory maximum at life. And he knew that because during the guilty plea, the judge told him, are you aware that based on your plea, counts one and two, you're facing 10 years mandatory minimum to life? And his response to that question was yes. Now, when we did the colloquy on the facts to be held responsible, he did admit to the 50 grams. And what the counsel is arguing now, which wasn't true at the time of the guilty plea, is that that was 50 grams of generic. And that was the basis for my objection to the pre-sentence investigation report, and the judge agreed with me. And so did the probation officer after I pointed that out to him because he subsequently changed it. And that defined range was no longer applicable, and now it became offense level 42, which in that case was much higher than what Mr. Posadon even received as a sentence. After it was amended, then it became 360 months to life. That was what Mr. Posadon was looking at at the sentencing hearing before we ever had any testimony of the witnesses. That's the fact. Also, even if we accept counsel's argument, and government does not accept it. When he pled guilty, was he told of the maximum sentence? Yes, Your Honor. Was he told? Your Honor, I included that in my brief. And on the record. I'd like the audience to hear it. Go ahead. Yes, Your Honor. This was on government supplemental record, page 20. The court said, now do you understand that the total maximum on all of the counts brought against you could be two life terms plus 20 years of fine up to $8,500,000, supervised release of up to life, and a total of $300 special assessment? Mr. Posadon's answer, yes. Also, Your Honor, even if we accept counsel's argument, and the government clearly objects to that argument, based on the case law of Booker, and based on the Ninth Circuit cases interpreting Booker, such as Dupas, Ameline, Crosby, it all interprets contradictory to what the counsel is arguing. But even if we accept her argument, her argument is incorrect. Because even under 50 grams of methamphetamine, generic methamphetamine, the statutory maximum is 20 years. It's from zero to 20 years. Mr. Posadon received 200 months, well below that maximum. So her argument fails again. Well, her argument is that the maximum is the guideline maximum, not the statutory maximum. Well, Your Honor, well, again. That's the argument. Well, you were correct. Because what's frustrating to the government is that counsel agrees with Booker, but only partly. She agrees with Justice Stevens when he gives his substantive opinion, but disagrees and does not follow and ignores the remedial opinion given by Justice Breyer. So you can't take one part and ignore the other. You take it as a whole, just as the Ninth Circuit did in its cases subsequent to Ameline. Counsel, the judge had other witnesses come in and establish what he thought the actual quantity was. Is that not correct? You are correct, Your Honor. Now, he said that he was doing it under the preponderance of the evidence standard. That's correct, Your Honor. And now we have this Stanton case which says that's wrong. It would have to be clear and convincing. Yes, Your Honor. Do you agree that we'd have to send it back because of that? No, Your Honor, I disagree. Just so the record is clear, it was Chief Justice Gilmore who rendered the sentence, who is a female, Your Honor. But in this instance, I disagree. And partly for the arguments that I expressed to the Court earlier, because we had cleared up the fallacy that it wasn't 50 grams of genera to which he pled guilty to, but was, in fact, 50 grams of actual methamphetamine, and he understood that the sentence to which he was going to receive The judge didn't have to go through any further fact-finding to establish the higher quantity. Are you talking about at the guilty plea, Your Honor? No, I'm talking at sentencing. He went ahead and had other witnesses. Okay. Is she, Your Honor? Yes, Your Honor. What happened was when we had the sentencing pre-sentence investigation report, the government objected. Yes. There was a revised pre-sentence investigation report. Yes. And at that time, the probation officer recommended offense level 42. Yes. Which is 360 months to life. Yes. After we had three witnesses who testified at the sentencing hearing, that actually went down. It actually went to offense level 40. And at that point, the sentencing guidelines were less. It was what Mr. Posadon was looking at was 292 months to 365 months. So if there was any deviation in this case, the deviation was below the guidelines because he ended up with a sentence of 200 months. My time is up. If there are any other questions. I guess I'm still puzzled why there was any evidentiary hearing with other witnesses if there wasn't some additional necessity to prove quality. Well, Your Honor, what happened is after the pre-sentence investigation report was revised, the defendant filed another objection objecting to the facts that led to the determination of the base offense level. So because of that objection and because the government has a burden of proof, the government supported that evidence with testimony. And the testimony was of three witnesses. It was a supplier and two distributors. And also the person who was involved in the money laundering offense was one person was involved in both counts. Thank you. So his mistake was that when he pled guilty, he should have worked out a plea agreement in advance. That's correct, Your Honor. He could have limited the amounts that he would have been held responsible for by stipulation. But then again, in dupas, they reached the stipulation and the court disregarded it. And the Ninth Circuit held that the sentencing judge could find facts during sentencing and not disregard that stipulation. But as a U.S. attorney, I would have recommended any agreement that I would have stipulated to. What do you say? I would have recommended any stipulation that I entered to, but that wasn't the case. Yeah. You were stuck by it. Yes, Your Honor. Yeah. Okay. Thank you. Thank you. One minute. Okay, Your Honor. During the plea, he said, I did conspire with the listed names to distribute 50 grams of methamphetamine. There was no question about, well, what kind of methamphetamine. There was nothing more than that. It didn't go over 50 grams. Also in the presentence report, the first one and the second one both says that as a result, the defendant made no specific admission as to the purity of the methamphetamine. As a result, it can only be the 50 grams of generic. And that's the same for the last one that gave him the 42, level 42. And it was level 42 not because it was crystal methamphetamine, but because it went up to five pounds or something he had based on the testimony of these other people. Again, no drugs were recovered, no drugs were tested. So the position still is that you need to go with what was admitted by the defendant in this case, not by what other people said, because there were no drugs. If there had been drugs found, tested, then I think this would be a different matter. Then he could have been questioned on that. But there were no drugs found or tested. So he should have been sentenced based on what he admitted to, which couldn't have been any higher than the level 78, Your Honor. Well, we've had no drug cases in the past. Correct, Your Honor. But there needs to be some proof or admission. Well, he had witnesses, came and testified. Correct. Okay, the matter will stand submitted. Thank you, Your Honor. Number four, U.S. v. Roland.
judges: B. Fletcher, Pregerson, Canby